My name is Al Spradling and I represent Matthew Peters and the City of Cape Girardeau in this particular matter. There are several issues presented in the brief and I am going to focus my oral argument on the qualified immunity issue and submit the attorney fee issues on the brief alone unless the court would have any questions pertaining to that part of the argument. As to the qualified immunity issue, everyone is presumed to conclusively know the law, whether the laws are from 1865, 1965, or 2013, and whether the laws are of the United States or of each state. However, knowledge of every law is really a fiction, as no one can really know every law, no matter how well trained or educated. In this case, we have an officer, a police officer, who sought advice by a probable cause statement whether his facts submitted in the probable cause statement constituted a crime. He sought the advice from people  I would like to raise the lectern a bit by pressing the button. You can press the button and the lectern will rise. I've got it as high as it will go. Oh, I see. I'm sorry. Thank you. Well, I'm sorry. That's okay. Okay. I suppose that happens to you lots, but anyway. Yes, sir. Sorry. But Officer Peters did seek the advice from people who were much more attuned to such information by their legal training or in substantial prosecutorial and judicial experience. In this case, neither the prosecuting attorney or the Associate Circuit judge who reviewed this matter prior to the issuance of a warrant knew of the legal standard as set forth in Texas v. Johnson or United States v. Eichmann, the flag desecration statutes. Mr. Snyder, in his case, is trying to draw a bright line test. You should have known the legal standard. Not whether you did or did not know is irrelevant. Whether you sought advice and presented the probable cause statement to superiors is irrelevant. However, that is not the standard. The standard is qualified immunity exists unless the officer acted dishonestly or was plainly incompetent. In this case, the district court made no such finding other than Officer Peters should have known or should have known of the legal standard of Texas v. Johnson and never sought an application for a warrant in this case. Although Officer the prosecuting attorney sought the application and the judge issued it. The issue is not what Snyder did in burning the flag, but rather the actions Peters took in response to Mr. Snyder's actions. As I've indicated, the district court found that Peters should have known about Texas v. Johnson as the law had been established for some time and Peters knew or should have known of that standard. We know that all laws are not known even though their standards have been established for quite some time. Now, shortly before the district court's decision, the United States Supreme Court in Messerschmitt v. Melander issued an opinion that is very similar to the case here. And, in fact, the Messerschmitt case was not cited by the district court in its analysis. Messerschmitt tells us that where a warrant is issued by a neutral magistrate, that is the clearest indication that the officers acted in an objectively reasonable manner. And Snyder not only did the magistrate review the matter, the county prosecuting attorney, who had over 20 years of experience, reviewed the probable cause statement before applying for the warrant. Even the prosecutor didn't know about Texas v. Johnson until it was brought to his attention. Now, the district court did not find that Snyder was plainly incompetent or improperly trained, but rather only knew or should have known of the legal standard. Peters is a police officer, a law enforcement academy trained and not a lawyer. The prosecuting attorney is a lawyer, 20 years experience. The associate circuit judge is a lawyer and substantial criminal experience. Neither knew of the legal standard. West Publishing Company, our official reporter of annotated statutes, has never cited in the section 578095, which is the Missouri flag desecration statute, any reference to Texas v. Johnson or United States v. Eichmann. Never shown up. So when Officer Peters went to look at the blue book where it cites these state laws, he found no reference to anything relative to a flag desecration statute being called into question. Now Messerschmitt has expanded the safe harbor, in my opinion, based on the officer's actions where a warrant has been applied for. And in a recent case that has been issued subsequent to Messerschmitt in October of 2013, the case of Armstrong v. Aslan, 734 Fed 3rd 984, the Ninth Circuit held that under Messerschmitt, approval of superiors, prosecutors, and a judge almost guarantees the honest police officer's claim to qualified immunity. And no one has questioned Officer Peters' honesty as a police officer. And certainly they haven't questioned whether or not he is in plainly incompetent. Even where the law is clearly established, if an officer Can I interrupt for a second? Yes, sir. Is that Ninth Circuit case in the briefs? No, sir. It just came out in October of 2013. Did you send us a 28J letter? No, sir, I did not. Well, if you want us to read it or consider it, you should send us a 28J letter. Yes, sir, I will. I apologize. It would have been helpful. I will make sure I get that to you immediately. Even where the law is clearly established, if an officer acts deliberately and rationally and seeks to determine the then valid and is still entitled to qualified immunity. The law is pretty clear that in making a determination as to law that has been clearly established, the inquiry is not how a court or lawyers might have understood the state of the law at the time of the challenged conduct, but rather in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he was confronted with. Well, are you... That doesn't go to knowledge, though. That goes to his assessment of the situation, right? Yes, sir. So, are you saying that even assuming that Officer Snyder was fully aware, or Officer Peters, rather, was fully aware of the Lawrence case and what the Supreme Court had held that he still could have believed that it was unlawful? Well, Missouri statute has never been challenged and has never been facially challenged until this decision in Snyder. And that's why he sought advice. He did not just arrest Mr. Snyder on the spot. He gave him actually a ticket for littering because Mr. Snyder threw the flag into a public street. It was only until Mr. Snyder returned to the police station that another officer informed him that Missouri has a statute on its books that criminalizes such conduct. And that's when Officer Peters went forward and reviewed the case law, submitted the probable cause statement, to which the prosecutor then applied through a warrant application to the circuit judge for issuance of a warrant. You said he did review the case law? He went back to look at the statute, 579095. Missouri had, the officers have a blue book, which they call as their reference guide to the laws. Now, they're not annotated, but they are on the books. And that's what he reviewed. But he took the further steps to see if this, in fact, was a valid law when he submitted the matters to the prosecutor. He did not arrest without a warrant officer, I mean, Mr. Snyder. And that's some of the distinguishing factors in some of these cases that are cited. This is not the typical case where you just arrest a protester or arrest somebody who may be acting in such a capacity of protesting or burning a flag. He actually went back and made some affirmative steps to find out if this was, in fact, a violation. It is clear that under Messerschmitt and the subsequent decisions that the court should reverse the district court and grant qualified immunity to Officer Peters. His actions were reasonable. He was not plainly incompetent. He was not dishonest. He was trained. He may not have been trained in specific First Amendment training, but not every police officer is trained in every aspect of the Constitution that exists. And at this point, if you listen to the argument that Mr. Snyder's advancing, every police officer should be a constitutional law expert. And that's not the case. Even our own lawyers are not constitutional law experts. And so I submit to the court that the district court was erroneous in its decision that Mr. Snyder is entitled, or Mr. Snyder is not entitled to proceed in this case against Officer Peters. Obviously, the prosecutor and the judge have absolute immunity, so it descends down onto Officer Peters. And we ask that the court consider granting Officer Peters, in the context of the facts of this case, qualified immunity. Thank you. Mr. Morgan? Yes, Your Honor. You may proceed. May it please the court. Jeremiah Morgan on behalf of the State of Missouri. The State of Missouri intervened in this case solely with respect to Count 1, which is a declaratory judgment request. Why did we do it? I think Judge Posner out of the Seventh Circuit captures some of the reasoning for that. He says in his decision in Lawson, do state legislatures have a duty to conform their statute books to authoritative judicial interpretations? After Johnson and Eichmann, should every state have been obliged, on pain of seeing its prosecutors enjoined, to rewrite its flagged discretion statute to create an express privilege for the conduct held privilege in those cases? He says there is no such obligation. Both Eichmann and Texas v. Johnson considered flagged discretion and did not conclude that they were facially invalid, but instead held as applied that they were unconstitutional. And as a consequence, the State of Missouri intervened in this case to answer that question with respect to the State of Missouri statute 578.095. Can it be applied not to expressive conduct, can it be constitutionally applied not to expressive conduct? We've made clear all throughout this, we are not here to defend the desecration statute on the basis of its application to expressive conduct, but instead only to non-expressive conduct. What would you say to the argument that it seems to me that Mr. Spraudling's argument almost works across purposes to yours? Because they're going to argue then, well, if we adopt your position, the next time somebody's arrested for burning a flag, they're going to say, well, it's on the books. It's still on the books in Missouri, so therefore, there's no violation, we can't, there's no relief. So ironically, I don't know that we're necessarily in cross positions there. Ironically, the federal statute is still on the books. It's still there. It's in 18 U.S.C. section 700. And so the same scenario could arise in that instance, too, because it's only been held to be as applied unconstitutional, not facially unconstitutional. The United States Supreme Court has not and would not declare it facially unconstitutional, and it was the Supreme Court that suggested alternatives that could be applied in non-expressive ways. So then Missouri should just rewrite its statute. I don't think we should rewrite it for you, I guess is what I'm saying. Right. And I'm not asking this court to rewrite it. I thought that's exactly what you asked us to do. No, I'm not asking this court to rewrite it. I'm asking this court to construe it only with respect to non-expressive conduct. You've asked us to say, to construe it and to limit it. And you said we should write it in such, read it in such a way that it's constitutional. Yeah, correct. Don't read it the way it is written right now, right? No, I wouldn't say that. The statute on its face does not say this is expressive conduct. It does not say, you know, any person who purposefully, publicly mutilates for political purposes or express displeasure or doesn't use that kind of language. It is on its face applying to misuse of a flag, not expressive misuse, but just misuse of a flag. This court could construe that and can construe that. This is what the Missouri Supreme Court has said with respect to its statutes, that the courts ought to apply them even narrowly to non-expressive conduct. This is the Planned Parenthood case. Going back to Officer Peters, though, so you're saying basically you're going to be leaving the next police officer hanging out there because now you're saying, well, they're going to have, this police officer should know that the Eighth Circuit Court of Appeals has construed this statute in a manner that's different than how it's actually worded. So the next time a police officer arrests somebody for burning a flag, they're not going to get immunity, right? Well, this is easily resolved by the fact that even on the statutes, I printed out the statute straight out of the, off the internet this morning, and it has a notation, permanent injunction entered 2013. So you want us to vacate that? No, I'm not asking the court to vacate that is unconstitutional as applied. In this case, I'm asking the court to, you know, overrule the decision that is facially unconstitutional. And why don't we just say, okay, so if we just said, don't apply it in an unconstitutional manner, where does that lead? Where does that lead the next Officer Peters? It leaves them in the same place that Mr. Spratley's saying, that he goes to his prosecutor asking for a probable cause. And the, and the prosecutor says, you know, clearly it's, it's been, it's been declared unconstitutional as applied to expressive conduct. That didn't happen in this case. So, right. And, and I don't know about the training and, you know, and the, the constitutional qualifications or knowledge. I can tell you, I knew of Texas v. Johnson. There's no requirement that they know about this. I don't know that I agree with that. Did Texas do in response to John, the Johnson opinion? What did Texas do? They didn't remove, they didn't excise it out of the statute. I'm not aware that any have, once that's been determined, just as just Judge Posner said, have gone through and legislative extracted it out of there. And Congress hasn't done that. My time at. Well, Congress, this is sort of off the point, but I was, I teach a course on, on, on criminal sentencing and, and Congress or Supreme Court's excised several portions of the Sentencing Reform Act is unconstitutional. But if you look at the stat, if you look at the West book, they're still all there. Right. And so, right. Your, your point is excellent. And I would say, you know, prosecutors, federal prosecutors would run kind of the same risk of looking, you know, you know, looking if they didn't look closely, if they didn't explore it a little bit more to find that my, my time is up. I just wanted to say one, if I might say one point on the attorney's fees, and that is in part solely because we knew it was a declaratory judgment claim and they wouldn't have been able to sue us in federal court on, on the basis of 11th amendment immunity and so forth. But we intervened because they were not defending it. And we wanted to answer this question. Can it be applied in non-expressive conduct? And that, in that way, attorneys fee should not have been awarded. And even if they had been awarded, we intervened and, you know, as soon as we had the decision, we were out of the case and should be apportioned accordingly. For that, for that reason, we ask that this court reverse on count one as well as on the attorney's fees or apportion those fees accordingly. All right. Well, thank you. Thank you, Your Honors. We'll hear from the appellate. Mr. Rothard? Yes. Tony Rothard. May it please the court. In this case, I think that even after argument today, everyone agrees that what happened to Frank Snyder being arrested and spending seven hours in jail was a violation of his right to engage in symbolic expression and a violation that conflicted with the First Amendment. But if the appellants are correct, then there's no remedy and nothing changes as a result of this case. Officer Peters has qualified immunity, so he's not liable. Of course, the prosecutor and the judge have absolute immunity and weren't even sued. The city has no municipal liability for failure to train, and the statute remains on the books, although every time it's been enforced, it's been in an unconstitutional way. It's always been against expressive activity. We don't believe that that's the law, that there has to be some remedy to what happened. And so I'll discuss in turn qualified immunity, the constitutionality of the statute, municipal liability, and I guess attorney's fees if there are any questions. In this case, Officer Peters, he didn't just call up the prosecutor and ask for advice. He prepared, executed under oath, and submitted a probable cause statement. The court can't pretend that a probable cause statement that Peters submitted had nothing to do with Snyder's arrest. It was what started in motion and caused the arrest. It's very much like an alley against Briggs, which still survives after Messerschmitt. This court has- How do you distinguish Messerschmitt? Well, Messerschmitt is, it was a search warrant, and I think that's the way it's most distinguishable. In a search warrant, police officers have to exercise judgment, and that judgment's often particular to the facts of a particular case. There are a lot of gray area. I submit that whether or not symbolic expression that desecrates a flag is not a gray area. That it is a black and white area if there is one in constitutional law. In cases that have been, this court has still applied the Malley standard after Messerschmitt. There's a small against McChrystal, which is mentioned in the briefs. There's a, and then there is the decision of Satterlin versus Spencer, which was decided after the briefs by this court. And in those cases, Messerschmitt and Malley are cited together for the same principle. So a civil rights suit against a police officer who applies for the intervening decisions of a prosecutor or a judge if, objectively, it's obvious that no reasonably well-trained, competent officer would have concluded a warrant should issue. And that's the standard that we believe applies here. And what, one of our cases said that? Well, yes, it's Malley versus Briggs, but- No, but what's one of our cases said that what you just said it said? Yes, the most recent one was Satterlin versus Spencer. It's reported at 725 F3D 838. So you wrote it, Judge Woolman. And that involved interpretation of a statute. And there was an ambiguous statute. And the question was whether or not the officer should have known of the ambiguous, the interpretation of the statute that it didn't require sex offenders to register their addresses from another country. So that involved a mistaken interpretation of the statute. And this court granted qualified immunity after setting forth the Malley versus Briggs standard. We upheld the grant of qualified immunity? You did in that case. But you set forth the standard. You said the standard is- May have been just gratuitous advice or gratuitous observation. Was it dicta or holding? Well, I think, well, you were quoting the Supreme Court and said this is the standard. We do that all the time. Yes. So I think the standard is, I'm sure it wasn't gratuitous. I think the standard is that if no reasonably competent officer would have concluded a warrant should issue, then qualified immunity does not apply. Your argument here or your position that, again, what was the timeline of Mr. Peters' interaction with the prosecutor? At what point did he talk to the prosecutor? He didn't ever talk to the prosecutor. He went back to the police station, completed a probable cause statement, and put it in the box that goes over to the prosecutor's office. And a few days later, a warrant was issued, and Officer Peters went and executed the warrant. And again, why wasn't he entitled to rely upon what the prosecutor did? You know, often, relying on the prosecutor and a magistrate judge should, often will show the reasonableness of a police officer's action. That is often true, especially in a search warrant or a gray area. But as the Supreme Court observed in Malley, mistakes happen even if they shouldn't because magistrate judges are busy, prosecutors make errors. And in cases where it's objectively obvious that there shouldn't be a warrant, the police officer can still be liable. And our position is in this case- Why should Officer Peters be held to a higher standard of legal knowledge than the prosecutor or the judge? I don't think he's held to- There's something inherently unreasonable about that? Well, he's not being held to a higher legal standard. It's just that they have absolute immunity, so they can't be sued. But he's the fall guy, as it were. And that is true. In one way, when it comes to the prosecutor, the judge, and the police officer, police officers only have qualified immunity. Another way of looking at it is that perhaps the city is responsible, since the city of Cape Girardeau put him on the streets without any training, which even minimal First Amendment training would have prevented this from happening. Is your position that the county prosecutor's opinion was so obviously erroneous that a rank and file police officer should have been aware of that fact? Yes, that is our position. But it's also true that where he made the error, where he committed the constitutional violation, was in submitting the probable cause statement in the first place. It should have never even gotten to the county attorney, so that the county attorney could make a mistake, and the magistrate judge could make a mistake, but those were obvious errors. That's true, but once it was submitted, wasn't that the prosecutor's decision, in effect, vitiate any erroneous decision on the part of Mr. Peters? It does not, it's a chain in the events that happened, and certainly it could suggest that his decision was reasonable, but it does not- Why shouldn't we follow the Second Circuit case? I don't know how it's pronounced, Amora versus Navarro? Well, there are several reasons. First of all, I think even if you did follow that case, Navarro, I think that this result would be the same in this case, in this particular case, where there are two Supreme Court precedents on point. But Navarro follows a different standard than the circuit. It breaks the second prong into whether a rule of constitutional law is clearly established, it breaks it into two parts and becomes basically a subjective test of what the police officer knew, rather than the objective test of what a reasonable, well-trained officer would have known. And even under that test, though, a reasonably well-trained officer would have known that Mr. Snyder's conduct was protected by the First Amendment. On the question of whether a probable cause, it's reasonable to think probable cause exists when there's a violation of the First Amendment. I think this court's closest case is Baraboe versus the city of Minneapolis. In that case, this court held that an objectively reasonable officer would be aware of implications of a state appellate court decision on a disorderly conduct statute. And the court held that qualified immunity was denied because there was no probable cause to arrest the plaintiffs for So here, in light of the US Supreme Court decisions, it was obvious that no probable cause existed to submit a probable cause statement for the arrest of Snyder for engaging in protected expressive activity. Despite the decision in the United States against Alvarez in 2012, Missouri still maintains a Stolen Valor Act that's nearly identical to the federal statute. The Supreme Court declared it unconstitutional. But a police officer cannot reasonably arrest Alvarez for making those same statements in Missouri. And this court has said before that even if there's a statute, you still, you don't get qualified immunity if there's a clear Supreme Court case on point. So in 1985, in Texas against Gardner, the Supreme Court found a Tennessee statute unconstitutional, but allowed police officers to shoot a fleeing felon who presented no danger. Missouri still hasn't updated its nearly identical statute, but Gardner is nonetheless clearly established, and this court cited Gardner for the proposition in a 2003 opinion, denying qualified immunity, saying that Gardner clearly established that using deadly force against a suspect under that case was unconstitutional. Had Texas, was it Texas versus Johnson, or however the name, had it been handed down at 10 o'clock that morning and Officer Peterson, Peter, would have taken this action at 2 o'clock in the afternoon, would the law still have been clearly established? Yes, yes. He would have been held to have checked his West Law at 1001 on the morning. It's an objective test, and when it comes to, especially when it comes to a Supreme Court decision on a basic principle of First Amendment law, police officers should be aware of the state of the law. Maybe they carry, maybe they carry iPads around with instantaneous access to Supreme Court opinions of the moment. That, well, that'd be good. But here, here we have 25 years. Somewhere in life's journey, there has to be some sense of reasonableness. Right. And, and maybe the reason. Best of maybe your view is not. Okay, well, I'll counter suggest that maybe reasonableness is somewhere between two hours and the 25 years that passed here between the Supreme Court's decision. Nice response. So officers, taking the other extreme, I don't know to what extent they give periodic, like we judges every year at a judicial conference. Dean Sherman Inchkey comes around and tells us what the Supreme Court has done, for those of us who haven't kept up to date. I don't know if the state of Missouri does that or this city does that with its officers. Well, the evidence here in this case was that there is an annual update, continuing education, I call it. But, but the police officers choose the classes and that, and for an officer, Peter's case anyhow has never included the First Amendment. But the fleeing felon case, for instance, the police chief testified that they had an update when that case came out. When Gardner came out, they, they sent around a memo and, and had continuing education about that. Um, I'd like to turn in my remaining time to the constitutionality of the statute. Uh, we, we have advanced an over breadth, um, claim. So this is different than the Supreme Court had in, in Johnson or in Eichmann, where there was, there was a defendant there who had engaged in certain action and was seeking to have the charges dismissed. Uh, and the over breadth standard applies and a statute will be found facially overbroad. Uh, if in a substantial number of applications, uh, it's unconstitutional. We have the extra layer here that, uh, the statute is content based. Uh, Johnson and Eichmann both say, although it's, I know it's not the usual rule, but in Johnson and Eichmann, the Supreme Court has says, when it said, when it comes to the flag, uh, laws desecrated, it forms a flag desecration are suspect because their purpose is content based. Uh, this statute is further content based in that. It's only some flags, uh, that are, uh, that are. Is the state in effect content contesting the points you're making? Uh, I don't know if they're contesting that point. I'm just trying to set up that. I think it's presumptually unconstitutional. Uh, uh, what we're really arguing about, are you arguing that no portions of it can be construed as constitutional? Yes. I do not believe that this can be construed in a constitutional manner. Um, we explained why in the brief. Also, though, um, I think weighing against their proposed construction is that O'Brien, the draft card case that they rely on, uh, distinguished Stromberg against California, which was a previous flag case by noting that the law issue in Stromberg could not be sustained as a regulation of non-communative conduct because it was aimed at suppressing communication. Um, that's in page 382 of O'Brien and I think it's dispositive here of whether, whether the statute can be saved, uh, under O'Brien. So do I understand that you've identified at least three instances when the, in addition to this case. Right. When there's been either actual or threatened prosecution for flag burning under this statute? Yes. So that, and that's, that's the other point in a substantial number of applications, the statute, in fact, all of them that we could find has been enforced only against expressive. Have you or the state identified any case in which it's ever been applied in a non, in, in a manner that would not be likely unconstitutional? No. Um, and I mean, we disagree about whether or not some of their hypotheticals are expressive conduct or not, but none of them have happened. None of those are actual cases. They're just hypotheticals. Hypotheticals. And judge woman, to answer your question about Texas, um, it's in page 14 or footnote 14 of our brief, but Texas did enact a new statute in response to Texas versus Johnson. And that was subsequently found facially unconstitutional, uh, itself. I don't remember how it differed exactly, but, um, it was found facially unconstitutional and the U S Supreme court denied, denied cert. Um, so, you know, the flag is, did you say that the Texas statute was ultimately found to be facially unconstitutional? Yes. Um, so the flags are different. I think is, is the problem here with the state's argument that, uh, they can regulate non-expressive conduct, you know, simply displaying the flag outside your home or your office or laying it on a coffin. It carries great meaning, great symbolic meaning, and it conveys a message of pride and patriotism or, or disdain, uh, regardless of whether the person who's hoisting the flag has any communicative intent. Uh, disrespectful treatment of the flag, which is what the statute targets, you know, it conveys a message to, and that is what the state is arguing against. And, and even there, if you could say that the statute somehow regulates non-communicative conduct, um, the real purpose here, uh, is related to, uh, suppressing communication and that's an improper purpose. Uh, finally, I just wanted to touch briefly on, uh, municipal, municipal liability. It's undisputed here that Officer Peters received, uh, no, none, no training on the First Amendment at all. Uh, Cape Girardeau argued and the district court agreed that it was fine that it relied on the state to provide the training, uh, and, and post-training. Uh, but it's Cape Girardeau, not the state that hired Peters and put him on the streets and it charged him with enforcing the laws and it, including section 578.095 and including a Cape Girardeau ordinance that was in effect at the time that was, that is nearly identical or was nearly identical. It would be better from my point of view, if states would, our municipalities would either repeal laws that are found unconstitutional or, or add language to them to fix them, to help out police officers, uh, help them understand, uh, but not repealing them and then sending officers with no First Amendment training out on the streets to enforce them, uh, demonstrates deliberate indifference to, uh, constitutional rights. And it, it should be no surprise under those circumstances that, uh, situations like this and the others we cited happen. Um, in the Eichmann case, the second flag case about the, uh, federal statute, um, the court quoted its earlier case and, and noted that it said, if there's a bedrock principle underlying the First Amendment, it's that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable. Punishing desecration of the flag dilutes the very freedom that makes this emblem so revered and worth revering. If there's no remedy for the violation of the constitutional rights in, in this case, then we do a disservice, uh, to the constitution and ultimately to the flag as well. In terms of remedy, what were the, what was the disposition of the charges against your client? They were dismissed. So to that extent, he had a remedy? Uh, he, he, he did have the charges against him dismissed, but he also spent, uh, seven hours in, in jail. Well, thank you for your argument. Thank you. Thank you. Okay, please score it again. Just briefly, I would like to comment on three issues that, uh, was raised. One was Peter should never have submitted the probable cause statement in the first place. That just vititates against law enforcement's efforts to determine if the, a law has been committed. Unless it's a warrantless arrest, which Barabow was, and then we got another issue. Officers all the time submit probable cause statements stating the facts, the evidence, and then is this a crime for the prosecutor to determine whether they're going to charge or not charge? And that's the purpose of the probable cause statement. That's exactly what Peters did. He has to rely on the prosecutor to make that determination. Yeah, this is a violation of the law. He isn't making that determination. So while he shouldn't have submitted a probable cause statement, we can say that all the time in a lot of charges that may be brought because the person's acquitted. A probable cause may just be a probable cause statement, but you go to trial, you're not, you're not guilty. You're not even, is it, is the rule that you're looking to us to apply is at the end of the day, is that if an officer submits a probable cause or search warrant or whatever it might be to, to, to the county attorney, uh, who then forwards it on to a judge who issues the warrant, that that's going to, in every case, insulate an officer. Not every case. As long as the facts are truthful, there's nothing dishonest about it. It lays out the truthful. Yes, sir. Assuming that, I think that is the standard we're looking for because otherwise officers are going to be held to a standard. They can't basically, um, maintain how are they going to, they're not going to be supplying, uh, probable cause statements to the prosecutor. If they know their, uh, liabilities in jeopardy, uh, every time they do that because the prosecutor either issues a warrant or erroneously has the judge issue the warrant and then a person spends a few hours in jail and gets dismissed, that just vitiates against the good law enforcement abilities in these cities and towns. So I think that is what we would ask the court to consider in this case. Thank you. Thank you.